## Case No. 3,029.

### The COLORADO.

[Brown, Adm. 411.][1]

District Court, E. D. Michigan. May, 1872.

DAMAGES—MARKET VALUE — EXPENSES OF EARNING FREIGHT.

1. In case of total loss by collision, the market value of the vessel just before the collision is the measure of damages.

[Cited in Leonard v. Whitwill, 19 Fed. 548.]

2. The market value is not what she would have brought at forced sale, but in the ordinary course of the sales of such property.

3. From the gross freight should be deducted the probable future expenses of earning the same.

In admiralty. The propeller Colorado was libeled by Elon W. Hudson, owner of the bark H. P. Bridge, for collision. The bark was sunk by the collision, and became a total loss, together with her entire cargo, which consisted of 65,000 bricks and 34,000 bushels of oats. The Colorado was held in fault, and it was referred to a commissioner to ascertain the damages. [Case No. 3,028.] The commissioner having made his report, the respondents except to the same: (1) as to the amount allowed for the value of the bark; and (2) because in the allowance for freight, no deduction was made for future expenses in earning the same, and that the amount allowed for freight was too large.

Wm. A. Moore, for exceptions.
H. B. Brown, opposed.

LONGYEAR, District Judge. First—As to the value of the vessel. The vessel being a total loss, her value just before the collision is the measure of damages. The difficulty is to ascertain the value. The criterion is, what she would have brought in the market, not under the hammer, at a forced sale, but in the ordinary course of sales of

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

such property. Lowndes, Coll. 141–146; 1 Pars. Shipp. & Adm. 542. The commissioner estimated the value of the vessel on the opinion of the libellant and eight other persons, owners, dealers in and builders of vessels. No question is made as to the competency or ability of these witnesses to testify, except that some of them had not seen or been on board the Bridge recently before her loss; nor but that the commissioner's allowance of $25,000 as the value of the bark is correct, as based upon those opinions. It is true that none of these witnesses, except the libellant and one or two others, had any knowledge of the condition of the bark just before the collision; but those who did know, particularly the libellant, described the condition in their testimony, and it is to be presumed that the commissioner applied the testimony of the other witnesses with reference to that description. To say the least of it, the testimony on the part of the libellant made a fair prima facie case for the allowance, and the question is now, was that case rebutted? To rebut the case thus made by libellant, respondents produced the testimony of several vessel builders, showing the cost of building a vessel of the description of the one in question, and what is the estimated annual rate of depreciation in value, and upon that basis succeeded in reducing the value of the bark considerably below the amount allowed. In the case of The Clyde, Swab. 24, Dr. Lushington said, upon this subject: "The value is the market price at the time of the destruction of the property, and the difficulty is to ascertain what would be its market price. * * * In order to ascertain this (the value) there are various species of evidence that may be resorted to; for instance, the value of the vessel when built. But that is only one species of evidence, because that value may furnish a very inferior criterion whereby to ascertain the value at the moment of destruction. The length of time during which the vessel has been used, and the degree of deterioration suffered, will affect the original price at which the vessel was built. But there is another matter infinitely more important than this—known even to the most unlearned—the constant change which takes place in the market." And in another case (The Iron-Master, Id. 443), the same learned judge says: "The best evidence is the opinion of competent persons, who knew the ship shortly before she was lost. The second best evidence is, the opinion of persons conversant with shipping and the transfers thereof. In addition to testimony of this description, many other circumstances may be called in aid, as the original price of the vessel, the amount of repairs done her, the sum at which she was insured, and other circumstances of a similar nature. It is manifest that facts of this kind, though not to be wholly excluded, have a slighter bearing upon the case; for, after a lapse of years, the amount of

price, from a change of circumstances, might have little bearing upon the question." And in Dobree v. Schroder, 2 Mylne & C. 489, Lord Cottenham also held that the market price was a better test of a ship's value than the prime cost, with a deduction for wear and tear. The learned judge said: "The other mode has this disadvantage, that it can never be applied with certainty to any two cases. In one case, a ship may have been purchased advantageously, and employed disadvantageously; and in another the reverse may have taken place." The correct rule upon this subject, when the vessel is a total loss, seems to be, that the market value of the vessel just before the collision is the proper measure of damages; that the best evidence of such value is the opinion of competent persons who knew the vessel shortly she was lost; and that the next best evidence is the opinion of persons conversant with shipping and the transfer of vessels. There are, of course, exceptions to this rule, as when the vessel lost, from some peculiarity of construction in order to adapt her to some special purpose out of the usual course of shipping, precludes there being any market value for her. An instance of this may be when a vessel is built for a special trade requiring peculiar and unusual conditions in her construction. In such a case, for want of a better criterion of value, cost of construction or purchase price, with a deduction for depreciation by ordinary wear and age, may be resorted to. See Lowndes, Coll. 141–146. But the present case does not fall within the exception. The commissioner had before him both classes of evidence stated in the rule, and although the evidence may be open to criticism in some respects, I think it was amply sufficient to justify his finding. The exception to the allowance of $25,000 for the value of the vessel is, therefore, overruled.

Second—As to the amount allowed for freight. This exception was in part submitted to at the hearing, and it was conceded that there should be deducted from the amount allowed by the commissioner $457, for future expenses in earning the freight. The freight upon the 65,000 bricks was allowed by the commissioner at the rate of $5 per thousand. Respondent contends that this is more than the testimony warrants. Hudson, the libellant, testified that the freight on the brick was either four or five dollars per thousand—that he was quite sure it was five dollars. This was a fact to be made out by libellant, and it ought not to be left uncertain, especially where, as in this case, it is susceptible of certainty of proof. The most that can be made of Hudson's statement is, that the freight on the brick was not less than four, nor more than five dollars per thousand; and I think that, at the most, the allowance ought not to be more than a medium between the two sums, or four dollars and fifty cents per thousand.

Fifty cents per thousand, amounting in the aggregate to $32 50, must therefore be deducted from the allowance made by the commissioner, in addition to the $457 before mentioned, making the whole amount to be deducted $489 50, to which interest must be added. The exception to the amount allowed for freight is, therefore, sustained.

| | |
|---|---|
| Amount to be deducted..............  | $489 50 |
| Interest from May 11, 1869, the date of the collision, to April 8, 1872, the date of the report, at 7 per cent.... | 99 94 |
| | $589 44 |

This amount must be deducted from the aggregate amount of the commissioner's report, viz., $34,264 70, and a final decree must be entered in favor of libellant for the remainder, viz., $33,675 26, with interest from April 8, 1872, the date of the commissioner's report, and costs of suit. Ordered accordingly.

[NOTE. The claimant appealed to the circuit court from the final decree herein, and the decision was affirmed. An appeal was then taken to the supreme court, where the decree of the circuit court was affirmed. See note to Case No. 3,028, next preceding.]